People ex rel. Smith v. Schiellein, 95 N. Y. 124; Election Law, §§ 11, 111 and 114.

A writ of mandamus should not be granted to compel the correction of an election return excepting in a clear case. Where, however, it is undisputed that a mistake has been made, the court may now be warranted in issuing the writ, not to compel the board of inspectors to correct their return in a particular way or to correspond with the ballots as found on reopening the box, but to reassemble and open the ballot box and re-examine the ballots to assist them in determining whether they have made a mistake and, if they find that a mistake has been made, to remedy it by correcting the return.

I have considered this question quite at length to show the impropriety of allowing a ballot box to be opened, excepting for the purpose of aiding a criminal prosecution, or in a civil action or proceeding, where the court may make a decision, that will have some binding force upon the rights of the interested parties and of the public as well.

The rights and interest of the petitioner, his opponent and the public all require that this order for the inspection of the ballots be vacated, but it is vacated without costs.

Order vacated, without costs.

---

GEORGE F. HEBLER, Plaintiff, *v.* MARSHALL BROWN, Defendant.

(Supreme Court, Franklin Trial Term, November, 1896.)

1. Deeds — Covenants.

A covenant of seisin is not a covenant against incumbrances.

2. Same — Warranty.

In order to constitute a breach of the covenant of warranty there must be an eviction, either actual or constructive, by a paramount title. Mere limitations or restrictions upon the use of the land are not evictions, the title and possession at the time being in the grantee.

3. Same — Reformation.

Where there is no mistake as to the actual agreement between the parties, but by a mistake of one or both of them, or of the scrivener, the deed drawn does not correctly express the agreement made, the deed should be reformed.

.Supreme Court, November, 1896.      [Vol. 18.

ACTION to recover damages for breach of covenants in a deed.

John P. Kellas, for plaintiff.

John P. Badger, for defendant.

McLAUGHLIN, J.  On the 28th day of May, 1891, the defendant executed and delivered to the plaintiff a deed of the premises described in the complaint, and in which he covenanted that he was seized of the premises, had good right to convey and would warrant the title to the same.  It appears that in September, 1889, he executed and delivered to one Meehan and Cowie a lease for a period of ninety-nine years, and by which he " demised, released and ' let ' to them all his ' right, title, interest, claim and property * * * to all mines and minerals in veins, mines, quartz and ' deposits,' " on the premises in question, " together with the right of way to and from said minerals, and sufficient land and space around said mines to operate the same and to erect buildings and machinery for all mining purposes," and for which the said Meehan and Cowie covenanted to pay fifteen cents a ton for each and every ton of mineral ores mined, etc., unless they should elect to purchase, which they had a right to do during the term of the lease, at a consideration of four hundred dollars ($400).  The plaintiff, in 1895, fearing that he would lose an opportunity, which he then had, to sell a portion of the premises, in consequence of this lease, voluntarily, at an expense to himself of twelve hundred dollars ($1,200), procured its cancellation and surrender and brings this action to recover of the defendant the amount which he paid.

The defendant, in answer to plaintiff's claim, alleges that, prior to the execution and delivery of the deed to him, it was understood and agreed that the premises were to be conveyed subject to the lease to Meehan and Cowie, and that in addition thereto the defendant reserved the right and privilege of taking water in pipes from a certain spring on the premises, and that the provisions were omitted by reason of a mutual mistake of the parties, and, therefore, asks that the deed be reformed so that it will conform to the agreement made.

The only covenants in the deed from the defendant to the plaintiff are those above mentioned.  The covenant that the defendant was at the time of the conveyance seized of the premises in fee simple and had good right to convey the same is nothing more or less than a covenant of seisin.  If the defendant was at the time of

the conveyance seized of the legal title, then this covenant has not been broken. Such a covenant is a covenant *in presenti*, and, if broken at all, is broken the instant it is made. In this respect it is unlike the covenant of warranty, which is necessarily a prospective covenant, a covenant the breach of which can only occur sometime after the conveyance is made. The former is a personal covenant, while the latter is one binding upon and runs with the premises conveyed. Did, then, the defendant, at the time of the conveyance, have the legal title to the premises? It seems to me there can be but one answer to this question. An inspection of the lease given to Meehan and Cowie shows that it transferred simply the right to mine, together with an option to purchase. It was an incumbrance, but a covenant of seisin is not a covenant against incumbrances. Chapter 475, Laws 1890; Whitbeck v. Cook, 15 Johns. 490; Stanard v. Eldridge, 16 id. 254; Packer v. R. & S. R. R. Co., 17 N. Y. 295. It follows, therefore, that the existence of this lease was not a breach of this covenant in the deed. The plaintiff, after acquiring title to the premises, immediately went into possession, and he or those claiming under him have ever since been in possession. No rights have been asserted under the lease, and the evidence does not disclose any act either done or threatened under it. How, then, can it be claimed that there has been any breach of the covenant of warranty? In order to constitute a breach of the covenant of warranty there must be an eviction, either actual or constructive, by a paramount title. Mere limitations or restrictions upon the use of land are not evictions, the title and possession at the time being in the grantee. A covenant of warranty is not a covenant against incumbrances. Chapter 475, Laws 1890; Boreel v. Lawton, 90 N. Y. 293; Rawle on Covenants, 144. The existence, therefore, of this lease, no act being attempted or threatened under it, does not constitute a breach of the covenant of warranty — and, if it did, it might well be doubted whether the plaintiff is in a position to take advantage of it. He voluntarily procured the cancellation of the lease. *Non constat* the holders of the lease never would have made any claim based upon or asserted any rights under it. For aught that appears, there are no minerals upon the premises. If the holders of the lease never exercised or claimed any rights under it, and there are no minerals upon the premises, how can it be contended that the defendant is liable for what the plaintiff voluntarily paid in order that there might be a perfect record title? The covenant of warranty, as we have already

seen, is not a covenant against incumbrances but is simply a covenant that the grantor will defend the premises, will hold them in the possession of the grantee and persons claiming under him, will take what steps are necessary to legally keep the possession from one claiming in hostility to his grant.

If the foregoing conclusions are correct, then it necessarily follows that the plaintiff is not entitled to recover for a breach of the covenants in the deed, unless the deed be reformed and some additional covenant placed therein. This I do not think should be done. On the contrary, I think the deed should be reformed by making it subject to the lease of Meehan and Cowie, and also by inserting a provision reserving to the defendant the right to take water in pipes from the spring referred to in the answer. As to the defendant's right to take water in pipes from this spring there does not seem to be any question, according to plaintiff's own evidence. He testified as follows:  " Q. Did he (referring to defendant) say anything to you about reserving this water?  A. Yes, sir; he did. Q. What did he say?  A. He said after we made the trade that he wished to reserve the water and the privilege, if the pipe froze, to take up the pipe.  Q. Was that before the deed was made?  A. Yes, sir.  Q. What did you do to that?  A. I told him I did not care anything about it; I said if you will keep it in repair, and if you dig up the ditch you cover it up again; I do not care anything about it.  Q. Then you agreed with his desire to reserve it?  A. I did."

It is apparent that the plaintiff himself supposed until some time thereafter that such a reservation had been inserted in the deed. It is not only apparent from his evidence, but from the construction which he, himself, put upon the deed. He sold a portion of the premises to one Durgin and in the deed to Durgin inserted the following: "Also reserving the right to one Marshall Brown to enter upon the premises for the purpose of repairing the water pipe to run across the said above-described premises." Why should such a reservation be inserted in a deed given by the plaintiff, unless he supposed some right had been reserved by the defendant in his deed to him? I am satisfied, even from the plaintiff's own evidence, that when the minds of the parties met upon the proposition to convey, when the original agreement was made, that it was understood and intended by both parties that the conveyance was to be made subject to the right of the defendant to take water in pipes from the spring mentioned, and that

such a reservation was to be inserted in the deed, and that it was omitted from the deed by a mistake of both parties. I am also satisfied that it was understood and intended by both parties that the conveyance from the defendant to the plaintiff was to be made subject to the lease in question. It is quite too. apparent to my mind, not only from the acts and statements of the plaintiff himself, but also from the conduct of the defendant when he was first approached in reference to it.

We, therefore, have presented a case where there is no mistake as to the agreement itself, the one upon which the minds of the parties met, but by a mistake of one or both of the parties, or the scrivener, the deed drawn does not correctly express the agreement made. Under such circumstances, ought not the court to reform the deed? I think it should. " In such a case," says Judge Earl (Born v. Schrenkeisen, 110 N. Y. 59), " if, by the mistake of the scrivener or by any other inadvertence, the writing does not express the agreement actually made, it may be reformed by the court. It is only where the action is to reform the agreement itself that it is required that it should be alleged in the pleading and proved on the trial that the mistake was mutual. Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected."

I think the defendant is entitled to judgment as prayed for in the answer.

Judgment for defendant.