McANDREWS & FORBES COMPANY, PLAINTIFF-APPELLANT, v. CAMDEN NATIONAL BANK, DEFENDANT-RESPONDENT.

Argued November 20, 1914—Decided June 14, 1915.

1. Whether the existence of an actual traveled highway across an open tract of land conveyed without mention thereof is a breach of a general covenant of warranty, *quære*.
2. When there is no open highway across land conveyed and no indication on the ground of such highway to apprise the grantee of its physical existence, and no subjection of the land to highway uses recognized in the title deeds by express mention or reference to other documents, a prior dedication to public use, afterward accepted by the public and enforced by judgment, will support a suit for breach of warranty.
3. Language of the deeds in question in this case examined and *held* not a recognition of a highway right over the *locus in quo*.

---

On appeal from the Supreme Court.

For the appellant, *Lewis Starr.*

For the respondent, *F. Morse Archer* (*Howard M. Cooper,* on the brief).

The opinion of the court was delivered by

PARKER, J. The appeal is from a judgment entered upon the direction of a verdict for defendant growing out of exclusion of evidence offered for plaintiff, and also out of the striking out of plaintiff's original complaint. The suit was for breach of warranty: the defence, that the warranty was not applicable to the *status* of the lands in question as a public street.

The covenant of warranty relied on was contained in a previous deed by the defendant to the Nonpareil Cork Manufacturing Company, dated March 14th, 1902, which in turn conveyed to plaintiff, January 27th, 1903. The covenant reads as follows: "That it, the said party of the first part (the defendant bank) and its successors all and singular the hereditaments and premises above described and granted or mentioned and intended so to be, with the appurtenances unto the said party of the second part, its successors and assigns, against it, the said party of the first part and its successors, and against all and every other person or persons whomsoever lawfully claiming or to claim the same or any part thereof, shall and will warrant and forever defend." The breach assigned was that the city of Camden in 1908 made claim to a strip of land comprising the major part of the premises included in plaintiff's deed, as being contained within a public street called Jefferson street, and that as a result of that claim plaintiff filed a bill against the city to quiet title to such strip, which led to litigation wherein plaintiff was defeated and the strip judicially declared to have been dedicated to public use as part of Jefferson street. *McAndrews & Forbes Co.* v. *Camden,* 85 *N. J. L.* 260. The fundamental position of the defence was that the existence of an easement for a public street is not a breach of warranty, and if it were, still, by the language of the deed from the bank to the cork

company and of the deed of that company to the plaintiff, the existence of Jefferson street was so recognized and so plainly indicated as to 'make the warranty inoperative so far as the subjection of that part of the land to the rights of the public was concerned. Defendant very properly does not deny that there was such a lawful eviction as will constitute a breach of warranty. *Coster* v. *Manufacturing Company*, 2 *N. J. Eq.* 467; *Kellogg* v. *Platt*, 33 *N. J. L.* 328, 332.

It is important, for present purposes, to note that neither the claim of the city of Camden nor the decision of this court supporting the same was based in any way on the language of these two deeds, but that the dedication was held to arise out of the designation of Jefferson street on a sales map used by the land company, which exploited a large tract including these premises, and the sales of lots by reference to said map. *McAndrews & Forbes Co.* v. *Camden, supra.* It is not claimed that the plaintiff at the time of accepting its deed knew anything about the map, and neither deed alluded to it in any way. The map was not filed in the office of the county clerk or register. If plaintiff had known of the map, that fact would not avoid a breach of warranty. *DeLong* v. *Spring Lake*, 72 *N. J. L.* 125. Consequently the language of these two deeds (which is before this court for the first time) must be relied on by defendant either as itself constituting a dedication, or as a recognition by the grantee of a previous one, which is very much the same thing.

We take up first the question whether the existence of a public highway, actually open, or of a highway *in posse* by reason of dedication and liability to future acceptance, which liability is turned into actuality by enforcement of the dedication, is a breach of general warranty of the fee. This point has not been decided by this court, nor, as we recall, in the Supreme Court, though it has been discussed in the Court of Chancery. *Beach* v. *Hudson River Land Co.*, 65 *N. J. Eq.* 426. When that case came to this court, we expressly reserved the point. 68 *Id.* 656. In other jurisdictions the decisions are not in accord. 11 *Cyc.* 1194, and note 91.

It may be conceded for present purposes, though we express no opinion on the point, that where the property conveyed is a farm or other open tract with an existing road running through it, a warranty without mention of the road is not broken by its existence, on the theory that the road is a physical fact of which the buyer is necessarily apprised. *Whitbeck* v. *Cook,* 15 *Johns.* 483; *Hymes* v. *Estey,* 116 *N. Y.* 501; *Memmert* v. *McKeen,* 112 *Pa. St.* 315; *DeLong* v. *Spring Lake,* 72 *N. J. L.* 125. The situation is essentially different, however, in a case where (as at present) the land is in a crowded city. The road had never been actually laid, and comprised within its lines most of the property conveyed and had been wholly or partly covered with buildings and wholly devoted to private business uses as part of a manufacturing plant, and no notice of its legal *status* given by conditions on the ground or (as we shall see presently) by the language of the title deeds.

As to such a situation, we consider the correct rule is that laid down in *Hymes* v. *Estey,* 116 *N. Y.* 501; 22 *N. E. Rep.* 1087, where it was said: "But when no such opportunity (to observe on the ground an actual devotion to public use) exists, and no means of notice of the existence of the right to a public easement is open to observation upon the premises, there is no well-founded reason to support the proposition that the subsequent appropriation by the public, in the exercise of such pre-existing right, of a portion of the land conveyed, is exempt from the operation of the covenant of warranty. In such case, it cannot be said that the purchaser, without notice of the existing burden upon the land, has taken title in reference to it, or that he gets all the propriety right in the premises which he is permitted to assume was assured to him by the covenant of his grantor." This should perhaps be qualified by saying that when the very language of the deed containing the warranty is such as to put the purchaser on notice of such an encumbrance, he should be deemed to have assented to its exception therefrom. This is not necessary to be decided; for assuming it, there would

still remain in the case at bar the question whether the language of the deeds was such as to express to or notify a purchaser that part of the land lay in what was or might be in the future a highway by dedication and acceptance, and that the warranty was not intended to apply, as against the public rights, to such part. An examination of this question requires insertion of the descriptions in full.

In the deed from the defendant bank to the cork company, containing the warranty, the description is as follows:

"Beginning at a point at right angles with Third street, distant five hundred and ninety-six feet west of the west line of Third street, and fifty-four feet seven inches south of the *extended south line of Jefferson street;* thence, northward, at right angles with said line and parallel with Third street, three hundred and twenty-seven feet six inches to a corner; thence, westward, and at right angles with said last mentioned line, eight hundred and twenty feet more or less to a corner in the riparian line; thence, southward, on said line, two hundred and seventy-two feet more or less to a corner; thence, eastward, on a line at right angles with said Third street, four hundred and two feet more or less to a corner on the westerly edge of the wharf or dock midway between the piers; thence, southwardly, along said wharf or dock, seventy-five feet one and one-quarter inches to a corner, said corner being thirty feet north of the line of the long wharf pier; thence, eastwardly, on a line at right angles with said Third street, three hundred feet to the place of beginning."

The description in the deed from the cork company to plaintiff runs thus:

"Beginning at a corner in the land of said MacAndrews & Forbes Company, formerly of Mellor & Rittenhouse Company, five hundred and ninety-six feet westward at right angles from the west line of Third street, and fifty-four feet seven inches southward at right angles from the extended south line of Jefferson street, and extending thence: (1) northward, at right angles with said extended line and paral-

lel with Third street, one hundred and fourteen feet seven inches to the north line of Jefferson street; (2) westward, by a line that would be the north line of Jefferson street, if the same were extended, seven hundred and fifty feet more or less to the exterior line established by the riparian commissioners in the river Delaware; (3) southward, by the same forty-five feet more or less to the land of MacAndrews & Forbes Company, being midway betwen the piers; (4) eastward, along the land of the said MacAndrews & Forbes Company parallel with Jefferson street, extended, four hundred and two feet more or less to the westerly edge of the wharf; (5) southward, along said wharf and the line of land of said MacAndrews & Forbes Company, seventy-five feet one and one-quarter inches more or less to a corner about thirty feet north of the north line of the long wharf or pier, measured on a line with the westerly edge of the first named wharf; (6) eastward, still along the line of said MacAndrews & Forbes Company's land at right angles with Third street, three hundred feet more or less to the place of beginning. Being a part of the premises conveyed to the Nonpareil Cork Manufacturing Company by the Camden National Bank by deed, dated March 14th, 1902, and recorded in the office of the register of deeds of Camden county, in book 260 of deeds, page 519, &c. Reserving unto the said the Nonpareil Cork Manufacturing Company, its successors and assigns, a right of way for persons, animals and vehicles and every method of transportation over that part of the above land, described as follows: Beginning where the easterly line of the premises hereby granted intersects the southern line of Jefferson street, and extending, thence, westward, in a straight line with the south line of Jefferson street, thirty feet; thence, northward, at right angles with said line parallel with Third street, sixty feet to the north line of Jefferson street, if it were extended; thence, eastward, in a straight line with the north line of Jefferson street, thirty feet to the east line of the premises hereby granted; thence, southward, along the same, parallel with Third street, sixty feet to the place of beginning."

In the first description we find only one clause in which Jefferson street is mentioned, viz., "the extended south line of Jefferson street."

In the second are the following: (1) the extended south line of Jefferson street, as above; (2) the north line of Jefferson street; (3) a line that would be the north line of Jefferson street if the same were extended; (4) parallel with Jefferson street extended; and especially in the reservation of the right of way (5) where the easterly line, &c., *intersects* the southern line of Jefferson street and extending, thence, westward, *in a straight line* with the south line of Jefferson street; (6) the north line of Jefferson street, if it were extended; (7) in a straight line with the north line of Jefferson street.

A careful examination of these descriptions, especially if they are also plotted on paper, will show clearly that the draftsmen of the deeds (who must be held to have expressed the intent of the parties) were careful not to commit either party to a recognition of Jefferson street, as a public street, beyond a point five hundred and ninety-six feet west of Third street. The reservation of a private right of way in the second deed brings this out clearly as to that deed. In the first, as we have seen, there is nothing except the phrase "extended south line of Jefferson street." The "extended line" is a produced line. The definition in Webster's International Dictionary is "to stretch out; to prolong in space," &c. We are satisfied that this mention of the extended south line was for purposes of location only, especially in view of the fact that the description closes a tract which includes most of what would be Jefferson street if it were on the ground, without once alluding to it except to locate a beginning point. *Meredith* v. *Sayre, 32 N. J. Eq.* 557. Returning to the deed from the cork company to the plaintiff, which contains the reservation of the private right of way, the language of both the grant and of the reservation is significant. The beginning is located with reference to the "extended south line of Jefferson street;" to this the foregoing remarks apply. The first clause runs to "the north line of Jefferson street."

But this is at the five hundred and ninety-six foot distance from Third street, and while of course a recognition of the street up to the five hundred and ninety-six foot limit, it does not of itself recognize it further. That five hundred and ninety-six foot line is the eastern boundary of the tract conveyed and the eastern end of the property claimed in the declaration. That Jefferson street is not recognized west of this point is shown by the second course "by *a line* that *would be* the north line of Jefferson street *if the same* (the street) *were extended*," which of course excludes the hypothesis that such street *is* extended. In the fourth course we find "parallel with Jefferson street extended;" again a mere location based on a geometrical production of the lines of the existing street. In the reservation of the private way over a rectangle thirty by sixty feet, we find in the beginning point a recognition of Jefferson street at that point, negatived to the westward by the first course "extending, thence, westward, in a *straight line* with the south line of Jefferson street." The second course ends in the north line of the street "if it were extended" and the third runs eastward "in a straight line with the north line of Jefferson street."

The intent might have been made plainer perhaps by saying in so many words that no dedication or recognition of any highway beyond the five hundred and ninety-six foot line was contemplated; but with that exception we have difficulty in seeing what could have been said in the description if, as apparently was the case, the location of the actual and produced lines of the street was relied on to fix points and control courses. Mathematically the language is untechnical; but comparatively few lawyers or scriveners are precise mathematicians.

In *Camden* v. *McAndrews & Forbes Co.*, 85 *N. J. L.* 260, 268, we called attention to the cases wherein as a matter of construction the question of dedication was: (1) for the jury, or (2) a court question and as such resolved (*a*) for the dedication or (*b*) against it. That opinion is applicable to the issue in the present case, and we are led to the conclusion that as a question of construction of the language of

these deeds, there was no recognition of Jefferson street beyond the five hundred and ninety-six foot line. As we have already held that under the circumstances the enforcement of a public right of passage would amount to a breach of warranty, it follows that there was such a breach when the city obtained a decree establishing its right west of the line.

The complaint was struck out on the contrary theory. Hence, this was error; and the resulting direction was also error, as it was based on the same theory. The rulings on evidence are not involved in our present determination and need not be dealt with.

Let the judgment for defendant be reversed and the cause reinstated for trial pursuant to the above views.

*For affirmance*—BLACK, WILLIAMS, JJ.   2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.   10.